**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

ANDREW ROSS and AMY ROSS                          CASE NO.:

      Plaintiffs,

vs.

BRANCH BANKING AND TRUST
CORPORATION;                                      **DEMAND FOR TRIAL BY JURY**

      Defendant.

_____/

**COMPLAINT**

**COMES NOW**, Plaintiffs AMY ROSS (hereinafter "Amy" individually) and ANDREW ROSS (hereinafter "Andrew" individually)(hereinafter "Plaintiffs" collectively), by and through their undersigned counsel, and sues Defendant, BRANCH BANKING AND TRUST CORPORATION (hereinafter "BB&T") and in support thereof respectfully alleges violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq. (*"FCRA").

**PRELIMINARY STATEMENT**

1.      This is an action for actual damages, statutory damages, punitive damages, costs and attorney's fees brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA").

2.      The FCRA enacted to promote the accuracy, fairness, and privacy of consumer information contained in the files of consumer reporting agencies and in doing so promoted the efficiency and public confidence in the banking system.

3.      BB&T has violated the FCRA with respect to Plaintiffs by failing to correct inaccurate representations made on credit reports.

1

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1337(a) under 15 U.S.C.§1681p with respect to Plaintiffs' FCRA claims.

5.      Venue is proper as a substantial part of the events or omissions giving rise to the claims occurred in this judicial district. 28 U.S.C. § 1391(b)(2)

## PARTIES

6.      Plaintiffs are natural persons, who at all times relevant resided in this judicial district.

7.      At all relevant times and cited herein, Plaintiffs are consumers as defined by 15 § USC 1681(a)(b) and (c).

8.      Plaintiffs are persons as defined by 15 § USC 1681(a)(b).

9.      Upon information and belief, BB&T is a financial holdings company with its principal place of business in Winston-Salem, North Carolina.  Defendant does business and has branch offices across multiple states, including Pinellas County, Florida.

## FACTUAL ALLEGATIONS

10.      On October 23, 2002, Plaintiffs executed a Mortgage in favor of Homecomings Financial Network, Inc., now Bank of America, N.A.

11.      The Mortgage on October, 23, 2002 secured the purchase of Plaintiff's personal residence located at 2121 Egret Drive, Clearwater, Florida 33764 and was evidenced by a promissory note in the amount of $203,700.00.

12.      On October 17, 2007, Plaintiffs executed a second mortgage in favor of Bank Atlantic, which was subsequently acquired by BB&T and the source of this lawsuit.

2

13.     The second mortgage was a lien against the personal residence with a maximum principal indebtedness of $200,000.00.

14.     In 2008, Plaintiffs faced financial hardships as a result of the collapse of the banking and mortgage industry and struggled to maintain payments on their mortgages in order to keep their home.

15.     As a result of the financial crisis Plaintiffs fell behind on their first mortgage; however, Plaintiffs continued to make timely payments on their second mortgage to Bank Atlantic and subsequently BB&T.

16.     After April, 2012, Plaintiffs never missed a payment on their second mortgage to BB&T despite the overwhelming financial hardships they faced.

17.     Ultimately, in an attempt to restructure their first mortgage with Bank of America and address other consumer debts, Plaintiffs filed bankruptcy on April 17, 2012.

***Chapter 13 Bankruptcy***

18.     On April 17, 2012, Plaintiffs initiated a bankruptcy case by filing a voluntary petition for relief under Chapter 13 of the Bankruptcy Code.

19.     The purpose of Plaintiffs filing bankruptcy was to restructure and/or modify their first mortgage with Bank of America in order to keep their home.

20.     Notice of Plaintiffs' bankruptcy case was sent to all creditors on or about April 18, 2012.

21.     In their bankruptcy plan, Plaintiffs proposed monthly payments to Bank of America in order to cure the arrearages for their first mortgage; with respect to their second mortgage, Bank Atlantic n/k/a BB&T would continue to be paid directly and <u>outside</u> the bankruptcy plan.

22.     On January 7, 2013 Plaintiffs' Chapter 13 Plan was confirmed.  The Confirmed Plan provided for, inter alia:

> Section (G) Secured Claims/Lease Claims Paid Direct by the Debtor: The following secured claims/lease claims are to be paid direct to the creditor or lessor by the Debtor outside the Plan.  The automatic stay is terminated in rem as to these creditors and lessors upon the filing of this Plan.  Nothing herein is intended to terminate any codebtor stay or to abrogate the Debtor's state law contract rights.  The Plan must provide for the assumption of lease claims/in the Lease/Executory Contract section below.
>
> Name of Creditor: Bank Atlantic       Property/Collateral:  Residence:  2121  Egret Drive Clearwater, FL 33764

23.     During the course of their Chapter 13 Bankruptcy case, Plaintiffs paid all of the required plan payments to the Trustee in addition to making all payments directly to Bank Atlantic, n/k/a BB&T; all payments made outside of the bankruptcy plan were timely.

24.     In or about May 2017, Plaintiffs were contacted by BB&T regarding the maturation of their second mortgage and entered into an agreement to modify the balloon payment resulting from the loan maturing.

25.     Plaintiffs received their Chapter 13 discharge on June 22, 2017.

26.     Approximately one month after receiving their Bankruptcy discharge, Plaintiffs finalized the terms of the modification and established a Fixed Option on their line of credit and continued making payments as agreed to BB&T.

27.     To date, Plaintiffs have made all payments in a timely manner to Bank Atlantic and BB&T and have remained current despite their financial struggles and the bankruptcy filing.

*Plaintiffs Credit*

28.     Shortly after receiving their bankruptcy discharge, Andrew applied for a Sam's Club credit card in or about December 2017.

29.     Unfortunately, Andrew was denied for the credit card by Synchrony Bank due to negative reporting on his credit report by Bank Atlantic and BB&T.

30.     Andrew became aware that Bank Atlantic and BB&T were reporting as having been included in Chapter 13 bankruptcy and/or discharged in bankruptcy despite the fact that the mortgage was never included in bankruptcy, was paid directly to Defendant at all times by Plaintiffs, and was never discharged.

31.     Upon discovering the inaccurate credit reporting by both Bank Atlantic and BB&T, Plaintiffs sent dispute letters to Equifax Information Services, Inc. (hereinafter "Equifax"), Experian Information Solutions, Inc. (hereinafter "Experian"), TransUnion, LLC (hereinafter "TransUnion"), BB&T and Bank Atlantic.  In the dispute letters, Plaintiffs notified Equifax, Experian, TransUnion, BB&T and Bank Atlantic that Plaintiffs filed bankruptcy as husband and wife in order to restructure their mortgage debt and the Bank Atlantic and BB&T accounts were inaccurately reporting as a part of the bankruptcy despite not being included in the bankruptcy and being paid outside of the chapter 13 bankruptcy plan.

32.     The purpose of Plaintiffs disputing the credit reporting was to correct the inaccurate reporting to reflect that Plaintiffs maintained a satisfactory payment history on their second mortgage and that their second mortgage was not included in their bankruptcy or discharged in bankruptcy.

33.     Plaintiffs specifically intended and were successful to exclude the second mortgage with Bank Atlantic n/k/a BB&T from their bankruptcy.

*Results of the Dispute*

34.     Plaintiffs initially disputed the credit reporting inaccuracies in or about December of 2017 after being denied for credit by Synchrony Bank.

35.     In response to their dispute, Plaintiffs received a letter from TransUnion dated January 4, 2018.

36.     As a result of the dispute, Andrew's TransUnion credit report was updated in relevant part as follows:

   a.   The Bank Atlantic Account information was updated to show the account as "*current; paid or paying as agreed*"

   b.   The BB&T line entry showing the BB&T account 5069163730372**** as included in the bankruptcy was verified as "*Account Included in Bankruptcy*".

37.     The trade line reported for Bank Atlantic was corrected; however, the BB&T trade line remained inaccurate, despite BB&T having acquired Bank Atlantic, and upon information and belief, being responsible for the credit reporting of Bank Atlantic.

38.     On or about August 15, 2018, Amy sent a second dispute letter to TransUnion, Experian, Equifax, BB&T, and Bank Atlantic; while Andrew sent a second dispute letter to Experian, Equifax, BB&T and Bank Atlantic in an effort to again address and correct the inaccurate credit reporting.

39.     In response to the August 15, 2018 dispute letter, Equifax deleted the Bank Atlantic account in its entirety from Andrew's credit report.  The trade line showing BB&T account 5069163730372**** was verified as included in "Bankruptcy Chapter 13".

40.     All changes made by Equifax in response to the dispute remain inaccurate.

41.     The Bank Atlantic trade line should not have been deleted from the credit report and should be reported as paid, closed, never late, and/or purchased by another lender.  Deleting the trade line in its entirety is still an inaccurate representation of the account.

42.     The BB&T trade line should be reporting as current, paying, and /or paying as agreed and should not include any reference to being included in bankruptcy or discharged in bankruptcy.

43.     Experian responded to the dispute letter and updated the BB&T account, 5069163730372****, as follows:

    i.   Status before dispute: *discharged through Bankruptcy Chapter 13. The account is scheduled to continue on record until April 2019.*

    ii.  Status after dispute:  *Paid, closed. This account is scheduled to continue on record until April 2019.*

44.     The BB&T trade line should be reporting as current, paying, and /or paying as agreed and should not include any reference to being included in bankruptcy or discharged in bankruptcy.

45.     TransUnion responded to Amy's dispute letter and updated both the BB&T account 5069163730372**** and Bank Atlantic account 135047740**** as deleted.

46.     Neither the Bank Atlantic nor the BB&T trade line should have been deleted from the credit report. Deleting the trade lines in their entirety is still an inaccurate representation of the accounts.

47.     The Bank Atlantic trade line should be reported as paid, closed, never late, and/or purchased by another lender.

48.     The BB&T trade line should be reporting as current, paying, and /or paying as agreed and should not include any reference to being included in bankruptcy or discharged in bankruptcy.

49.     Equifax responded to Amy's dispute letter and deleted the Bank Atlantic account in its entirety from her credit report and verified the BB&T account 5069163730372**** as included in the bankruptcy.

50.     The Bank Atlantic trade line should not have been deleted from the credit report and should be reported as paid, closed, never late, and/or purchased by another lender.  Deleting the trade line in its entirety is still an inaccurate representation of the account.

51.     The BB&T trade line should be reporting as current, paying, and/or paying as agreed and should not include any reference to being included in bankruptcy or discharged in bankruptcy.

52.     Experian responded to Amy's dispute letter and deleted the Bank Atlantic account in its entirety from her credit report and verified the BB&T account 5069163730372****, stating "*the company that reported the information has certified to Experian that the information is accurate.  This item was not changed as a result of our processing of your dispute…*".

53.     The Bank Atlantic trade line should not have been deleted from the credit report and should be reported as paid, closed, never late, and/or purchased by another lender.  Deleting the trade line in its entirety is still an inaccurate representation of the account.

54.     The BB&T trade line should be reporting as current, paying, and/or paying as agreed and should not include any reference to being included in bankruptcy or discharged in bankruptcy.

***Continued Impact of Inaccurate Reporting***

55.     In September 2018, Andrew applied for a Fidelity Visa Signature Card and was denied due to Defendant's inaccurate credit reporting, which Defendant has failed to correct.

56.     On or about October 2, 2018, Plaintiffs met with a Mortgage Broker to refinance the mortgages on their primary residence.

57.     Plaintiffs were notified that the BB&T mortgage was reporting on their credit reports as included in the bankruptcy, despite Plaintiffs multiple disputes and attempts to correct.

58.     The reporting of the BB&T account as included in bankruptcy as well as the deletion of satisfactory payment history for the Bank Atlantic account resulted in the denial for their mortgage loan consolidation.

59.     TransUnion's deletion of the BB&T second mortgage created an immense problem because a lien is recorded against the property but TransUnion's report fails to reflect such lien or any payment history on that lien.

60.     To date, Equifax, TransUnion, and Experian's inaccurate reporting of Plaintiffs' BB&T and Bank Atlantic trade lines continues to paint a false and damaging picture of Plaintiffs by adversely affecting Plaintiffs' account balance/credit amount ratio and by failing to accurately report Plaintiffs' timely monthly payment history.

61.     Plaintiffs feel helpless in their efforts to regain control of their creditworthiness. Further, repeated denials based on Defendant's inaccurate reporting has caused Plaintiffs embarrassment, frustration, distrust and anxiety.

62.     Plaintiffs have spent significant hours attempting to cure the inaccuracies with Defendant and have been unable to resolve the inaccurate reporting.

## CLAIMS FOR RELIEF

### COUNT I
### BB&T'S VIOLATION OF 15 U.S.C § 1681 *et seq.*

63.     Plaintiffs re-allege and reincorporate paragraphs 1 through 59 above.

64.     The aforementioned reports are "consumer reports" as defined by 15 U.S.C. § 1681a(d)(1).

65.     15 U.S.C. §1681e(b) states whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

66.     15 U.S.C. §1681s-2(b)(1) states:

> After receiving notice of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall-
> A. Conduct an investigation with respect to the disputed information;
> B. Review all relevant information provided by the consumer reporting agency pursuant to §1681i(a)(2);
> C. Report the results of the investigation to the consumer agency;
> D. If the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
> E. If an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
>    i.   Modify that item of information;
>    ii.  Delete that item of information; or
>    iii. Permanently block the reporting of that item of information.

67.     Upon information and belief, pursuant to 15 U.S.C. § 1681i(a)(2), BB&T received Plaintiffs' dispute letters from all three bureaus.

68.     BB&T violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information.

69.     BB&T violated §1681s-2(b)(1)(B) by failing to review all relevant information provided by the defendant CRA's.

70.     Had BB&T conducted a reasonable investigation to determine whether the disputed information was inaccurate, BB&T would have discovered that their predecessor, Bank Atlantic was not included on Plaintiffs' Chapter 13 bankruptcy case, and promptly and *accurately* modified those items of information, deleted those items of information or permanently blocked the reporting of that item of information.

71.     Had BB&T reviewed the payment history, it would have revealed that all payments came directly from Plaintiffs and not from the bankruptcy trustee.

72.     BB&T violated §1681s-2(b)(1)(A) by failing to report the results of the investigation to Equifax, Experian, and TransUnion.

73.     BB&T violated §1681s-2(b)(1)(A) by failing to promptly and accurately modify that item of information; delete that item of information; or permanently block the reporting of that item of information.

74.     §1681s-2(b)(1)(A) provided [a]ny person who willfully fails to comply with any requirement imposed under the FCRA with respect to any consumer is liable to that consumer in an amount equal to the sum of –

> i.    Any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000.

> ii.   Such amount of punitive damages as the court may allow; and

      iii.     In the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

75. §1681s-2(b)(1)(A) provides [a]ny person who is negligent in failing to comply with any requirement imposed under the FCRA with respect to any consumer is liable to that consumer in an amount equal to the sum of –

      i.     Any actual damages sustained by the consumer as a result of the failure; and

      ii.     In the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

76. BB&T's complete indifference as to its obligations under the FCRA reveal a conscious disregard for the rights of Plaintiffs, and the injuries suffered by Plaintiffs are attended by circumstances or fraud, malice, and wanton and willful conduct, calling for the imposition of punitive damages.

**WHEREFORE**, Plaintiffs request the following relief:

      i.     Find BB&T in violation of §1681s-2(b)(1)(A)

      ii.     Award any actual damages to Plaintiff as a result BB&T violation;

      iii.     Award any additional damages, as the Court may allow, in an amount not to exceed $1,000.00 for each such violation;

      iv.     Award any punitive damages, as the Court may allow;

  v. Award the costs of the action, together with any attorney's fees incurred in connection with such action as the Court may deem to be reasonable under the circumstances; and

  vi. Award such other relief as this Court deems just and proper.

**COUNT II**
**BB&T, as successor in interest to Bank Atlantic's, VIOLATION OF**
**15 U.S.C § 1681 *et seq.***

77. Plaintiffs re-allege and reincorporate paragraphs 1 through 59 above.

78. In 2012, while Plaintiffs were in the midst of their bankruptcy proceedings, Bank Atlantic was acquired by BB&T and BB&T became the successor in interest to Plaintiffs' Bank Atlantic mortgage.

79. As a result of BB&T's acquisition of Bank Atlantic, BB&T is responsible for the credit reporting as it relates to Bank Atlantic.

80. The aforementioned reports are "consumer reports" as defined by 15 U.S.C. § 1681a(d)(1).

81. 15 U.S.C. §1681e(b) states whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

82. 15 U.S.C. §1681s-2(b)(1) states:

After receiving notice of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall-

After receiving notice of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall-

  A. Conduct an investigation with respect to the disputed information;

13

B.  Review all relevant information provided by the consumer reporting agency pursuant to §1681i(a)(2);

C.  Report the results of the investigation to the consumer agency;

D.  If the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

E.  If an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—

   i.   Modify that item of information;
   ii.  Delete that item of information; or
   iii. Permanently block the reporting of that item of information.

83.    Upon information and belief, pursuant to 15 U.S.C. § 1681i(a)(2), BB&T received Plaintiffs' dispute letters from all three bureaus.

84.    BB&T violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information.

85.    BB&T violated §1681s-2(b)(1)(B) by failing to review all relevant information provided by the defendant CRA's.

86.    Had BB&T conducted a reasonable investigation to determine whether the disputed information was inaccurate, BB&T would have discovered that their predecessor, Bank Atlantic was not included on Plaintiffs' Chapter 13 bankruptcy case, and promptly and *accurately* modified those items of information, deleted those items of information or permanently blocked the reporting of that item of information.

87.    BB&T violated §1681s-2(b)(1)(A) by failing to report the results of the investigation to Equifax, Experian, and TransUnion.

14

88.     BB&T violated §1681s-2(b)(1)(A) by failing to promptly and accurately modify that item of information; delete that item of information; or permanently block the reporting of that item of information.

89.     §1681s-2(b)(1)(A) provided [a]ny person who willfully fails to comply with any requirement imposed under the FCRA with respect to any consumer is liable to that consumer in an amount equal to the sum of –

    a.  Any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000.

    b.  Such amount of punitive damages as the court may allow; and

    c.  In the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

90.     §1681s-2(b)(1)(A) provides [a]ny person who is negligent in failing to comply with any requirement imposed under the FCRA with respect to any consumer is liable to that consumer in an amount equal to the sum of –

    i.  Any actual damages sustained by the consumer as a result of the failure; and

    ii. In the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

91.     BB&T's complete indifference as to its obligations under the FCRA reveal a conscious disregard for the rights of Plaintiffs, and the injuries suffered by Plaintiffs are attended by circumstances or fraud, malice, and wanton and willful conduct, calling for the imposition of punitive damages.

**WHEREFORE**, Plaintiffs request the following relief:

i. Find BB&T in violation of §1681s-2(b)(1)(A)

ii. Award any actual damages to Plaintiff as a result BB&T violation;

iii. Award any additional damages, as the Court may allow, in an amount not to exceed $1,000.00 for each such violation;

iv. Award any punitive damages, as the Court may allow;

v. Award the costs of the action, together with any attorney's fees incurred in connection with such action as the Court may deem to be reasonable under the circumstances; and

vi. Award such other relief as this Court deems just and proper.

**DATED** this 22nd day of January, 2019.

Respectfully submitted,

/s/ Octavio Gomez
Octavio "Tav" Gomez, Esquire
Florida Bar #: 0338620
Morgan & Morgan, Tampa, P.A.
One Tampa City Center
201 N. Franklin Street, Suite 700
Tampa, Florida 33602
Telephone: (813) 225-6745
Facsimile:  (813) 225-5402
Primary Email: TGomez@ForThePeople.com
Attorney for Plaintiff